J-S84017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SEMARK ASSOCIATES, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RCL, LLC | : | No. 2576 EDA 2018 |

Appeal from the Order Entered July 26, 2018
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  3432 April Term 2017

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                                    **FILED MARCH 20, 2019**

Semark Associates, LLC ("Semark") appeals from the order entered July 26, 2018, granting summary judgment in favor of RCL, LLC ("RCL"), in this declaratory judgment action concerning the priority of interests as to a liquor license.  On appeal, Semark argues the trial court erred as a matter of law when it determined that RCL's security interest in the liquor license had priority over Semark's security interest.  For the reasons below, we reverse the order granting summary judgment and remand for further proceedings.

The facts underlying Semark's claim are well-known to the parties and set forth in detail in the trial court's July 26, 2018, opinion, accompanying its order granting RCL's motion for summary judgment.  **See** Trial Court Opinion, 7/26/2018, at 1-5.  In summary, Semark is the owner of a property on North 3rd Street in Philadelphia, which a prior tenant operated as a bar restaurant. When that tenant defaulted, it agreed to sell its liquor license to Semark in

exchange for $20,000.00. On October 23, 2015, Semark entered into a written lease agreement for the property with Razz, LLC ("Razz"). On October 29, 2015, Semark also assigned its rights and interest in the liquor license (which was under contract with the prior tenant) to Razz for the amount of $150,000.00, pending approval by the Pennsylvania Liquor Control Board ("PLCB"). The assignment was secured by a promissory note. Both the lease and the assignment provided Semark with a security interest in the liquor license, as well as the right to repurchase the liquor license upon Razz's default for the amount of $1.00. Both documents also specifically stated that Semark "may perfect its lien by filing a financing statement (form UCC-1)[.]" Lease Agreement, 10/23/2015, at ¶ 8/2(d); Assignment-Liquor License, 10/29/2015, at ¶ 12.

The PLCB conditionally approved the transfer of the liquor license on December 8, 2015. The Certificate of Approval and Letter of Authority provided, in relevant part: (1) the Board had "conditionally approve[d] the license application for transfer[;]" (2) an attached "Certification of Completion" had to be executed and returned to the Board "affirming the financial arrangements were completed as reported[;]" (3) the letter authorized the transferee (Razz) to sell liquor for 30 days; and (4) "failure to conclude settlement within 30 days of the date of [the] letter may result in the approval being rescinded." Certificate of Approval & Letter of Authority 12/8/2015. Attached to the Certificate of Approval was a Certification of Completion that stated it must be completed and submitted to the PLCB within

15 days of settlement. *See* Certification of Completion. The record does not reveal when, or if, the certification of completion was executed.

The following day, however, December 9, 2015, before Semark filed a UCC-1 statement, Razz entered into an installment judgment note with RCL, whereby RCL agreed to loan Razz $50,000.00, with the liquor license serving as partial collateral. Razz and RCL also entered into a Security Agreement, in which Razz granted RCL a security interest in the liquor license, and represented that it was clear and free from other encumbrances. That same day, RCL filed a UCC-1 financing statement to perfect its security interest in the liquor license. Semark filed its UCC-1 statement on December 18, 2015. When Razz subsequently defaulted on its rent, Semark confessed judgment for possession and money damages on December 29, 2016. During the eviction process, Semark first discovered the financing agreement Razz entered into with RCL. Thereafter, on April 24, 2017, Semark filed this declaratory judgment action seeking a determination of the parties' competing security interests in the liquor license. Both parties later filed cross-motions for summary judgment. On July 26, 2018, the trial court entered an order and accompanying opinion, denying Semark's motion for summary judgment, and granting RCL's motion for summary judgment. This timely appeal followed.[1]

_____

[1] The trial court did not order Semark to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

When considering the propriety of an order granting summary judgment, we are guided by the following:

> Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Atcovitz v. Gulph Mills Tennis Club, Inc.***, 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy***[ ***v. Metropolitan Life Ins. Co.***], 928 A.2d [186,] 195 [(Pa. 2007)]. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our scope of review plenary. ***Weaver v. Lancaster Newspapers, Inc.***, 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

***Estate of Agnew v. Ross***, 152 A.3d 247, 259 (Pa. 2017).

The only issue in this appeal is which party's security interest in the liquor license takes priority. Pursuant to Section 9203 of the Uniform Commercial Code, the following three elements must be met for the attachment of a valid security interest:

> (1) the debtor must have signed a security agreement with a description of the collateral or the secured party must have possession of the collateral; (2) the secured party must have given the debtor value for the collateral secured; and (3) the debtor must have rights in the collateral.

***Commercial Nat. Bank, of Pennsylvania v. Seubert & Assocs., Inc.***, 807 A.2d 297, 304–305 (Pa. Super. 2002), *appeal denied*, 822 A.2d 704 (Pa. 2003). ***See*** 13 Pa.C.S. § 9203. After attachment, Section 9322 sets forth the basis for determining priority among conflicting security interests: "Priority

dates from the earlier of the time a filing covering the collateral is first made or the security interest … is first perfected[.]"  13 Pa.C.S. § 9322(a)(1).

Semark concedes RCL gave value to Razz in the form of a $50,000, loan, and Razz "executed a security agreement in [RCL's] favor" with regard to the liquor license.  Semark's Brief at 13.  Accordingly, Semark states the issue in this appeal is "the debtor's rights in the collateral."  **Id.**  Although Semark acknowledges RCL filed its UCC-1 financing statement before Semark, it insists the security interest Razz granted to RCL was subject to Semark's right to repurchase the license.  **See id.** at 14.  Indeed, Semark maintains "[t]he issue is not one of priority but rather a question of what rights [RCL] has in the License by virtue of the security interest given by Razz."  **Id.** at 16.  Because Razz's rights were subject to Semark's right to repurchase, Semark argues RCL's rights in the liquor license were encumbered as well.

The trial court found both Semark and RCL have "valid security interests in the liquor license."  Trial Court Opinion, 7/26/2018, at 6.  However, the court concluded RCL perfected its security interest first by filing a UCC-1 financing statement before Semark filed its UCC-1 financing statement.  **See id.** at 8.  Consequently, the trial court determined "RCL's security interest in the liquor license has priority over Semark's security interest in the liquor license."  **Id.**

However, the court's ruling is dependent upon a determination that Razz had valid rights in the liquor license on December 9, 2015, the day RCL filed

its financing statement. Our review of the record reveals a factual question as to when Razz's rights in the liquor license were perfected.

As the trial court explained in its opinion, the PLCB approved a conditional transfer of the liquor license from the prior tenant to Razz on December 8, 2015. *See* Trial Court Opinion, 7/26/2018, at 3. The court noted the transfer was subject to certain conditions, specifically, "the execution and return to the PLCB of a Certification of Completion affirming financial arrangements[,]" which was to be submitted within 15 days of settlement. *Id.* However, the trial court observed a completed Certification of Completion was not included in the certified record. *See id.* at 3 n. 11. Furthermore, although Semark averred in its motion for summary judgment that the transfer of the liquor license was not approved until December 18, 2015,[2] the trial court found Semark did "not cite any evidence to support this statement." *Id.* Rather, the trial court determined the "record evidence shows that the PLCB approved the transfer of the liquor license to Razz on December 8, 201[5]." *Id.* at 6 n. 25. The court further found:

> While certain items were required by the PLCB to be submitted before the transfer became permanent, Razz did have rights in the liquor license at the time the Installment Judgment Note and security agreement was entered into with RCL which could be attached. A debtor's limited rights in collateral, short of full ownership, are sufficient for a security interest to attach. See, 13 Pa.C.S.A. § 9203 comment 6.

*Id.*

_____

[2] *See* Semark's Motion for Summary Judgment, 3/16/2018, at ¶ 13.

Here, the record reveals a material factual dispute, that is, the date when Razz acquired rights in the liquor license sufficient to pledge the license as collateral for its loan from RCL. Although Razz received conditional approval of the license transfer on December 8, 2015, that approval was **contingent** upon proof of settlement and a completed Certification of Approval. **See** Certificate of Approval & Letter of Authority, 12/8/2015. The regulations adopted pursuant to the Liquor Code[3] provide that if an application to the PLCB concerns the transfer of a liquor license, "the letter of authority shall be effective upon completion of the underlying financial transaction." 40 Pa.Code § 3.8(a). **See** Certificate of Approval & Letter of Authority, 12/8/2015 ("**Failure to conclude settlement within 30 days of the date of this letter may result in the approval being rescinded**.") (emphasis supplied). The Code further explains the certification of completion must "be signed by the transferor and the transferee[,]" and that the **"[f]ailure to submit a properly executed certificate of completion may void the approval**." *Id.* (emphasis supplied). **See also** Certification of Completion (stating, "A copy of this completed form must be attached to the 'Certificate of Approval' issued by the PLCB's Bureau of Licensing to initiate temporary operating authority.").

We conclude the record contains a genuine issue of material fact as to when Razz obtained non-voidable rights in the liquor license, pursuant to

---

[3] 40 Pa. Code §§ 1.1-17.41.

Section 3.8 of the Liquor Code regulations, such that a security interest would attach under the Section 9203 of the UCC. Accordingly, we reverse the order granting summary judgment and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/20/19